IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| LEISA SHANNON, | )<br>)<br>) |
| Plaintiff-Intervenor, | )<br>) |
| v. | ) Case No. CIV-24-01016-PRW |
| | )<br>) |
| SUNROOMS AND MORE DESIGN CENTER, INC., | )<br>)<br>) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant Sunrooms and More Design Center, Inc.'s Motion to Dismiss Intervenor's Complaint (Dkt. 22); Plaintiff-Intervenor Leisa Shannon's Response (Dkt. 25); and Defendant's Reply (Dkt. 26). For the following reasons, the Court **DENIES** the Motion (Dkt. 22).

*Background*

This is a Title VII sex discrimination case. The well-pleaded allegations in Shannon's Complaint (Dkt. 17) are as follows. Shannon was employed as a Customer Support Manager by Sunrooms from approximately November 2021 to May 15, 2023. General Manager Michael Hainrihar (who "performs the human resources functions" for Sunrooms) directly supervised Shannon. (*Id.* at 2). Donald Durrett is the majority owner of Sunrooms.

1

Shannon alleges Durrett subjected her and other female employees to daily verbal (and sometimes physical) sexual harassment throughout her entire employment. For example, Shannon alleges that shortly before her birthday, Durrett told her not to get pregnant and later asked if she was ready for her birthday spanking. (Dkt. 17, at 2–3). Shannon reported Durrett's comments to Hainrihar, but he merely instructed Shannon (and another female employee) to advise newly hired women to be careful around Durrett. Hainrihar would also monitor the video cameras at the facility and call Shannon if he observed Durrett talking with female employees to ask about the interaction.

Shannon tolerated Durrett's comments and innuendos until early April 2023, when it turned physical. Durrett allegedly pulled one of Shannon's "thigh high" socks down to her ankle, commenting that he "liked them better that way." (Dkt. 17, at 3–4). This left a scratch on Shannon's leg. Shannon was visibly upset and told Durrett that his behavior was "not okay." She immediately reported the incident to Hainrihar, who, after meeting with Durrett, told Shannon to take the rest of the week off without pay "to get [her] life together." (*Id.* at 4 (alteration in original)). Shannon agreed to take the rest of the day off, but informed Hainrihar that she could not afford to take the whole week off. The next day, Hainrihar scolded her for leaving work early the previous day.

Immediately thereafter, Hainrihar began retaliating against her. Specifically, on April 22, 2023, Hainrihar withheld Shannon's bonuses that she earned from scheduling potential customer consultations. When Shannon asked Hainrihar about withholding her bonuses, he claimed she was not entitled to them because one customer was Durrett's friend and another had a flat roof. These reasons, however, had never previously disqualified her

2

from receiving bonuses. The next day, Hainrihar denied a previously approved vacation day scheduled for early May.

Meanwhile, Durrett's harassing conduct continued. On May 2, 2023, Durrett told her that her voice was "sexy." On May 8, he said that Shannon looked nice and needed an older man. On May 9, Hainrihar again withheld Shannon's bonuses. Shannon alleges that on May 15, 2023, she was constructively discharged because she could no longer tolerate the ongoing harassment, refusal to correct said harassment, and retaliation against her for reporting the harassment.

Consequently, Shannon brings several claims under Title VII, as well as an Oklahoma Protection of Labor Act claim. Sunrooms seeks dismissal of Shannon's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### *Legal Standard*

In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[1] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[2] Additionally, the Court must "draw all reasonable inferences in favor of the non-moving party[.]"[3] While factual allegations are taken as true, a court

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

[2] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

[3] *Doe v. Woodard*, 912 F.3d 1278, 1285 (10th Cir. 2019) (citation omitted).

need not accept mere legal conclusions.[4] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough to state a claim.[5]

## *Analysis*

I.  **Shannon timely sought leave to intervene.**

Sunrooms first argues that the Court should dismiss Shannon's complaint as untimely. Under Federal Rule of Civil Procedure 24(a)(1), courts must, on a timely motion, "permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute[.]" As the Court previously held, Shannon enjoys such an unconditional right, and thus permitted her to intervene. (Dkt. 13).

Courts are to assess the timeliness of a motion to intervene "in light of all the circumstances, including the length of time since the applicant knew of [her] interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances."[6] This analysis is contextual, and "absolute measures of timeliness should be ignored."[7] The focus of the inquiry is not on punishing tardy intervenors, "but rather a guard against prejudicing the original parties by the failure to apply sooner."[8]

---

[4] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[5] *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

[6] *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (citation omitted).

[7] *Id.* (citations omitted).

[8] *Id.* (citation omitted).

Courts should therefore allow intervention "where no one would be hurt and greater justice could be attained."[9]

Here, Shannon moved to intervene less than a month after the filing of the EEOC's Complaint, and she filed her complaint thirty-two days after the Court granted her leave. Sunrooms makes much of the fact that Shannon filed her complaint after Sunrooms filed its Motion to Dismiss the EEOC's complaint. But any prejudice to Sunrooms is minimal at this early stage of the proceedings and outweighed by the prejudice that would accompany denying Shannon leave to intervene. Accordingly, the Court finds that Shannon's motion to intervene and complaint were timely.

## II. The Court denies the Motion.

### A. Shannon stated a claim for hostile work environment.[10]

Turning to the merits, Sunrooms argues that Shannon has not stated a claim for hostile work environment. Title VII prohibits employers from discriminating against an employee "with respect to [her] compensation, terms, conditions, or privileges of

---

[9] *Id.* (citation omitted).

[10] At the outset, the Court notes that although Shannon does not expressly seek to recover under a separate retaliatory hostile work environment theory, her hostile work environment claim relies in part on alleged retaliatory harassment. Although the Tenth Circuit has not formally recognized a retaliatory hostile work environment cause of action, *Kline v. Utah Anti-Discrimination & Lab. Div.*, 418 F. App'x 774, 780 n.1 (10th Cir. 2011), several district courts within the Circuit have. *See, e.g.*, *Juarez v. City & Cnty. of Denver*, No. 23-CV-00409-PAB-NRN, 2024 WL 1156610, at *9 (D. Colo. Mar. 15, 2024) (collecting cases); *see also Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998) ("retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim"). Because Sunrooms does not raise the issue, the Court need not decide whether such a claim is viable.

employment" because of her sex.[11] To state a claim for hostile work environment, a plaintiff must allege facts showing "(1) that she was discriminated against because of her sex; and (2) that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of her employment and created an abusive working environment."[12] Severity and pervasiveness "must be judged from both an objective and a subjective perspective."[13] Sunrooms does not dispute that Shannon subjectively perceived her work environment as hostile. Instead, it argues that the alleged conduct was not objectively severe or pervasive enough to support a hostile work environment claim.

Courts are to evaluate severity and pervasiveness based on the totality of the circumstances[14] in the social context of the workplace, including factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[15] The Tenth Circuit has noted that "the severity and

---

[11] *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted).

[12] *Id.* at 663 (citation and internal quotation marks omitted).

[13] *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097–98 (10th Cir. 1999) (footnote and citation omitted).

[14] The Court considers Shannon's allegations in the aggregate. A "hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021). Courts may therefore consider "the entire time period of the hostile environment[.]" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002). *See also Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1227 (10th Cir. 2022) (noting that courts may aggregate two separate hostile work environment claims).

[15] *Morris*, 666 F.3d at 664 (citation and internal quotation marks omitted).

pervasiveness evaluation is particularly unsuited" for resolution on summary judgment or a motion to dismiss because it is "quintessentially a question of fact."[16] But courts may nonetheless dismiss claims where the alleged harassment "does not rise to the level necessary to state a hostile work environment claim under Title VII."[17]

Title VII "does not establish a general civility code for the workplace," so "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[18] Moreover, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[19] Accordingly, the standards for judging hostility will, when properly applied, "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[20]

On consideration of the factual allegations in the Complaint, the Court finds them sufficient to state a plausible claim that Shannon suffered a hostile work environment while employed by Sunrooms. Sunrooms argues that the conduct alleged here does not rise above the sort of "offhand comments" and "isolated incidents" that fail to constitute a Title VII violation. To be sure, most of Shannon's examples consist of boorish and juvenile

---

[16] *O'Shea*, 185 F.3d at 1098 (citation and internal quotation marks omitted).

[17] *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 523 (10th Cir. 2017).

[18] *Morris*, 666 F.3d at 663–64 (internal citations omitted).

[19] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation omitted).

[20] *Id.* (internal quotation marks and citation omitted).

statements. And the alleged physical incident was isolated—though humiliating. But she alleges that Durrett engaged in daily harassment and, taken with the withholding of Shannon's bonuses, has plausibly alleged severe discrimination. Moreover, Durrett's alleged behavior so permeated the office that Hainrihar instructed Shannon to advise new female hires to be wary of Durrett and would call her to ask about Durrett's interactions with female employees. She has therefore alleged that the abusive environment altered the terms and conditions of her employment. Thus, Shannon describes circumstances that, viewed in the light most favorable to her, a reasonable person could find to be abusive.[21]

Sunrooms also argues that Shannon only raises conclusory allegations that it knew of the discrimination. "[A]n employer is liable for a claim of hostile work environment only if it knew, or should have known, about the hostile work environment and failed to respond in an appropriate manner."[22] Shannon, however, specifically alleges that she (and other employees) reported Durrett's behavior to Hainrihar, who did little to nothing in response. Shannon has therefore stated a claim for Title VII hostile work environment.

---

[21] *See Robinson v. Okla. ex rel. Okla. Dep't of Hum. Servs.*, No. CIV-20-1100-D, 2020 WL 7249630, at *2 (W.D. Okla. Dec. 9, 2020) (finding that the plaintiff stated a claim where she alleged that she endured verbal and physical acts of sexual misconduct over a three-month period).

[22] *Ford*, 45 F.4th at 1230 (emphasis removed) (citing *Wright-Simmons v. City of Okla. City*, 155 F.3d 1264, 1270 (10th Cir. 1998)).

### B. Shannon stated a claim for constructive discharge.

Sunrooms also seeks dismissal of Shannon's constructive discharge claim. The standard for a constructive discharge claim is "very high."[23] To state a claim for constructive discharge based on a hostile work environment, a plaintiff "must allege facts sufficient to show" that the "environment was 'so intolerable that a reasonable person would have felt compelled to resign.'"[24] The inquiry is whether the alleged environment was objectively intolerable; the plaintiff's "subjective views of the situation are irrelevant."[25] A plaintiff may show constructive discharge by pleading that retributive acts followed a complaint of sex discrimination.[26]

The Court finds that Shannon has stated a claim for constructive discharge. Shannon alleges that she suffered a deluge of misconduct, and that when she complained of physical misconduct, Sunrooms withheld her bonuses in retribution. These facts might have made

---

[23] *Rollins v. Am. Airlines, Inc.*, 279 F. App'x 730, at *4 (10th Cir. 2008); *see, e.g.*, *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017). (An employer's requirements "to work two extra hours per week, turn in timely case notes, and justify non-FMLA sick time" did not constitute an objectively intolerable working environment.); *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325–26 (10th Cir. 2004) (A plaintiff's humiliation due to an investigation into her management practices and reassignment to another position was not objectively intolerable.); *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533–34 (10th Cir. 1998) (Being the "only teacher required to bring a doctor's note when she was sick," and reprimanded for walking out of a meeting was not objectively intolerable).

[24] *Brown*, 708 F. App'x at 523 (citing *Penn. State Police v. Suders*, 542 U.S. 129 (2004)).

[25] *Hiatt*, 858 F.3d at 1318.

[26] *Rennard v. Woodworker's Supply, Inc.*, 101 F. App'x 296, 309 (10th Cir. 2004) (quoting *Jeffries v. State of Kan.*, 147 F.3d 1220, 1233 (10th Cir. 1998)).

a reasonable employee feel compelled to resign.[27] Whether they would have made a reasonable employee resign is to be decided later.[28] Accordingly, dismissal of Shannon's constructive discharge claim is inappropriate.

### C. Shannon stated a claim for Title VII retaliation.

Next, Sunrooms moves to dismiss Shannon's retaliation claim. To state a claim for retaliation, a plaintiff must allege "(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[29] Sunrooms argues that Shannon has not plausibly alleged the second or third elements.

#### 1. Shannon plausibly alleged causation.

The Court begins with the issue of causation, which Sunrooms challenges first. When considering causal connection, courts are to afford temporal proximity between a protected activity and an adverse action considerable weight. In fact, the Tenth Circuit has noted that "in the context of retaliation claims, [it] ha[s] permitted plaintiffs to establish a

---

[27] *See Beck v. Figeac Aero N. Am., Inc.*, 382 F. Supp. 3d 1170, 1178 (D. Kan. 2019) (employee stated constructive discharge claim based on profane remarks, manager's violent behavior, and retaliatory probation after complaint).

[28] *See Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1228 (10th Cir. 2009) (citation omitted) ("Whether a constructive discharge occurred is a question of fact.").

[29] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (footnote and citation omitted).

prima facie case of discrimination by only showing close proximity in time between protected activity and an adverse action."[30]

As detailed above, Shannon alleges that within a few weeks of reporting the physical misconduct, Sunrooms withheld her bonuses for seemingly pretextual reasons and denied her previously approved vacation time. Viewed in the light most favorable to Shannon, this is sufficiently close in time to support an inference of causation in this case.[31]

    *2.    Shannon plausibly alleged materially adverse acts.*

Sunrooms also contends that denial of bonuses and vacation time do not constitute adverse employment actions under Title VII. Because the Court concludes that withholding of bonuses can constitute a materially adverse action, it does not address whether denial of vacation time does. To plead a materially adverse action, a plaintiff must allege facts that demonstrate that the act "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[32] Actions such as "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."[33]

As United States District Judge David L. Russell has observed, there is a circuit split as to whether the denial of a discretionary bonus constitutes an adverse employment

---

[30] *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 n.5 (10th Cir. 2008) (collecting cases).

[31] *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (holding that one-and-a-half-month period between the protected activity and adverse action can, by itself, establish causation), *overruled on other grounds by Ellis v. Univ. of Kan. Medical Ctr.*, 163 F.3d 1186, 1193-97 (10th Cir. 1998).

[32] *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

[33] *Id.*

action.<sup>34</sup> The parties cite to no Tenth Circuit authority directly addressing the issue, and the Court has found none.<sup>35</sup> But other district courts in the Tenth Circuit have found that denial of discretionary bonuses can constitute materially adverse action.<sup>36</sup> As Judge Russell reasoned, in light of the Tenth Circuit's "liberal definition of the term 'adverse employment action[,]' . . . failure to award an employee a performance bonus would constitute an adverse employment action in this Circuit if the employee makes a sufficient showing that the bonus was warranted by [her] performance."<sup>37</sup> The Court concurs.

Here, Shannon alleges that Sunrooms withheld bonuses twice within a month after reporting the misconduct. She also alleges that she had, prior to her report, received bonuses under similar circumstances. Taking the well-pleaded allegations as true, a

---

[34] *Jones v. Roache*, No. CIV-04-1706-R, 2005 WL 8157737, at *6 (W.D. Okla. Nov. 2, 2005) (collecting cases).

[35] Sunrooms relies solely on *Burlington*, 548 U.S. at 68. But the *Burlington* standard (detailed above), does not necessarily preclude the denial of bonuses from qualifying as a materially adverse employment action.

[36] *Hickman v. Flood & Peterson Ins., Inc.*, No. 80-C-1139, 1982 WL 455, at *3 (D. Colo. July 29, 1982) (finding prima facie retaliation where plaintiff filed a charge in August and was denied a wage increase and delayed a bonus in December), *aff'd*, 766 F.2d 422 (10th Cir. 1985); *Vialpando v. Johanns*, 619 F. Supp. 2d 1107, 1126 (D. Colo. 2008) (upholding jury verdict where employer's reduction of bonus from $5,000 to $2,000 could deter a "could deter a reasonable employee from invoking Title VII"); *Debroux v. Wormuth*, No. 2:20-CV-955, 2021 WL 5206903, at *10 (D.N.M. Nov. 9, 2021) (finding significant drop in discretionary bonus following EEO activity was more than a "petty slight" and constituted materially adverse action under *Burlington*).

[37] *Jones*, 2005 WL 8157737, at *7.

reasonable juror could infer that the bonus denials might dissuade a reasonable employee from reporting discrimination. Therefore, Shannon stated a claim for retaliation.[38]

### D.  Dismissal of Shannon's state law claim is inappropriate.

Shannon's final claim arises under the Oklahoma Protection of Labor Act. Sunrooms first argues in cursory fashion that Title VII has preempted Shannon's state law claim. The lone authority on which it relies, *Brown v. General Services Administration*, stands for the proposition that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment."[39] In the same opinion, the Court noted that it had previously "held that in the context of [p]rivate employment Title VII did not pre-empt other remedies."[40] And, in an unpublished opinion, the Tenth Circuit has noted that Title VII generally only preempts state law where "the state law permits employment practices that violate or contradicts Title VII."[41] As demonstrated below, the provisions of the Oklahoma Protection of Labor Act on which Shannon's claim rests do not permit employment practices that violate or contradict Title VII. Accordingly, this argument is baseless.

---

[38] In reply, Sunrooms argues that Shannon neither reported the incident to her supervisor nor complained about the withheld bonuses. But as discussed above, the well-pleaded Complaint alleges otherwise, and at this stage, the Court accepts those allegations as true.

[39] 425 U.S. 820, 835 (1976).

[40] *Id.* at 833.

[41] *Pascouau v. Martin Marietta Corp.*, 185 F.3d 874, at *11 (10th Cir. 1999) (citing *Cal. Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 290-91 (1987)).

Sunrooms next asserts that Shannon fails to state a claim under the Oklahoma Protection of Labor Act. The Act creates a private cause of action for employees to recover unpaid wages and liquidated damages from Oklahoma employers.[42] It defines "wages" as:

> compensation owed by an employer to an employee for labor or services rendered, including . . . bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due, or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation[.][43]

Shannon has stated an Oklahoma Protection of Labor Act claim. Sunrooms asserts that Shannon's allegations are conclusory, but she specifically alleged that Sunrooms withheld bonuses that were earned and due and that it had previously issued under identical circumstances.

Finally, Sunrooms argues that Shannon's claims that she was not properly paid are untrue and unsupported by evidence. It also argues it paid Shannon what she was due. But this is the pleading stage. The Court is to take the *plaintiff's* well-pleaded allegations as true. And Shannon is under no obligation at this juncture to present evidence in support of her allegations. Moreover, Sunrooms does not attach any evidence of its own which would allow the Court to properly convert its motion into a motion for summary judgment. Shannon's state law claim therefore stands.[44]

---

[42] OKLA. STAT. tit. 40, § 165.2; 162.9.

[43] *Id.* § 165.1(4).

[44] Sunrooms also moves to dismiss Shannon's class action claims, but as Shannon argues in response, her complaint does not raise any class action claims. Accordingly, the Court need not address the issue.

*Conclusion*

Accordingly, the Court **DENIES** the Motion (Dkt. 22).

**IT IS SO ORDERED** this 20th day of February 2026.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE